Good morning everyone, welcome. And as you can see Judge Rovner is appearing by video conference today and I hope you can all see and hear her. Please let us know if you can't. With that I will call our first case this morning which is Jennifer Krieger versus the United States. Mr. Barrow. Bill Barrow on behalf of petitioner Jennifer Krieger may please the court. The premise of this case is simple. Jennifer Krieger was sentenced for a crime she did not commit. It's a crime she did not concede. It's a crime that she was not convicted of. That's because the prosecution could not prove that she committed that crime. Now our opening brief explains the multitude of problems that the prosecution had with respect to its original case. That includes the sloppy police work, it includes the flaws in the testing of the blood samples, it includes the inexplicable failure not to test cocaine as one of the two potential causes of death, notwithstanding the fact that injection sites were found in Ms. Curry's arm and that a syringe was found in Ms. Curry's purse that was later determined to contain cocaine. So put simply, the prosecution knew that it could not win. So it changed the game. It superseded its original two count indictment and it charged Ms. Krieger with distribution. Now at the time I'd imagine Ms. Krieger and her attorney thought that this was some sort of gift, that this was a godsend. But this was anything but. Essentially this was a strategic maneuver and it allowed the government to take the second prong of the original charge, the most problematic part of its case, take that away from the jury and then give it to the district court judge to determine by preponderance of the evidence, which is obviously a much lower standard of proof. Now the difference between the sentencing schemes for distribution versus distribution with death resulting is quite substantial. It's essentially the entire statutory maximum. It's 20 years. The pre-sentence report recommended 10 to 16 months imprisonment for the distribution and then with the death resulting enhancement added in, that shot up automatically to 20 years. And this was the only sentence that the district court judge could have imposed. And he noted this in his sentencing order and he lamented this fact. He actually stated that had he the appropriate discretion, he would have required Ms. Krieger to serve 14 to 17 and a half years in prison. And that's about two and a half year, six year difference. That's a lot of time. And especially for someone like Ms. Krieger who's been serving 10 years at this point, that's a very substantial difference. District Court Judge Gilbert also noted the lower standard of proof was the determining factor. In other words, the government's strategic maneuver paid off. Had they been required to present their case and prove it beyond a reasonable doubt, they would have not succeeded. This sounds like an alien error and that's not within the scope of the CA in this case. And because those sorts of errors are not retroactive as we held in Creighton. Correct, Your Honor. So you have to fit yourself within the scope of the CA, which is a barrage error, if I'm pronouncing that case name correctly. Correct. Your Honor, we're well aware of the court's amended certificate of appealability, which said Elaine was not the ground that we could argue here. And we have not argued that ground. Our argument is made under the Beerage case. I'm not sure if it's Beerage or Barrage. That's what we presented our argument under. Now, there are two parts to that decision. If I may explain, Justice Scalia first established, relying on Elaine of course, he stated that the death-resulting enhancement must be submitted to a jury and determined beyond a reasonable doubt. Then based off of that, he established, or he said, knowing or intentional distribution of a drug and then death resulting from that distribution. And so, and this is analogous to the case that we have here. So we're not relying on the procedural issue here. We're relying on the new offense, which is a narrower offense. And I think one need to look no further than the fact that the government initially charged Ms. Krieger with distribution and death resulting, but then they had to change that. So there's your substantive distinction. We, all we need to do is look at what the original charge was and now what, and then what the second charge was in the superseding indictment. Right. It still sounds like an Elaine error to me. Oh, go ahead, Judge Roper. Mr. Barrow, if this court were to rule in your favor, what would that look like? What would happen on remand? Well, essentially Ms. Krieger would have a new sentencing hearing. She's already pleaded guilty to the distribution, so that much is settled. But I think it's abundantly clear that Judge Gilbert would like the opportunity to conduct another sentencing hearing. And essentially, this hearing would require the government to prove the death resulting enhancement beyond a reasonable doubt. There would be a higher standard. And that's consistent with the Bureauage. So you don't, you don't think that he could consider that as a sentencing factor on remand? He, he indicated he thought an appropriate sentence, if I recall correctly, was around 16 or 17 years for this case. Correct. I believe it's 14 to 17 and a half years. Yes. My understanding. He's already made that finding by preponderance of the evidence. He's already made the finding by preponderance of the evidence that fentanyl was the cause of death. But I think he pretty clearly indicated that had the government gone to a stricter standard, to the beyond the reasonable doubt standard, that the government would not have met that burden. So effectively, Ms. Krieger's sentence, if he stuck to his recommendation, would be 14 to 17 and a half years. Let me, I think I agree with you that there are two aspects of the Bureauage decision. But let me just run this by you because it's what concerns me. There seems to be a procedural side of the case based on the Alain decision that this element would need to be charged in the indictment, proved to a jury beyond a reasonable doubt or admitted, et cetera. That procedural part, as I understand what we've done with Alain, is not retroactive. The substantive part is but for causation of death is required. That's already been found. So why doesn't that, why isn't that sufficient to resolve this case with an affirmance? Respectfully, Your Honor, the but for causation issue, rather, let me start with the death resulting enhancement. That's subsumed within the but for causation issue. So if you look at the opinion, Justice Scalia starts with death resulting requires, needs to be submitted to the jury and found beyond a reasonable doubt. The very next sentence is based on Alain. But then based on that, then we get our new aggravated offense, the new two element offense. And so we don't get there unless the death resulting enhancement has to be submitted to the jury. So it's difficult. I understand the government wants to extract this portion of the ruling and essentially say Burrage is only retroactive in this respect. But I don't see how you do that. These two rulings or this reasoning is intertwined there and you can't unpack that. And if I may, just comparing Burrage or distinguishing the instant case in Burrage from Creighton, the facts here are nearly identical to Burrage. The only difference is the drug in question. So, again, we're focusing on the substantive crime, which requires that both elements be submitted to a jury and found beyond a reasonable doubt. And if I may, in terms of addressing the Creighton opinion, that analysis was based on this court's prior holding in Curtis. And there the court dealt with whether to apply or whether Apprendi applies retroactively under T. Now, obviously, the court declined to do so. But in that case, it noted the procedural issue. It stated Apprendi is about nothing but procedure. And then it noted that Apprendi would not change which facts have what legal significance. And that's the key difference here. Because under Burrage, I'm sorry. I'm sorry. You know, there is a slight delay. And forgive me if I'm stepping on anyone. But it seems to me that we really can't have any confidence that anyone at all at the time of the sentencing was thinking about but-for causation. The only statement that the government has, it seems, for indicating that the court was based on our opinion, from the court of appeals opinion, not from the district court. And of course, at that time, we didn't know there would be a Burrage. And our use of the language was not particularly focused because there was no standard to focus upon. It wasn't until the Supreme Court declared the death assaulting required but-for causation that any court had any reason to focus on that particular distinction. So, I mean, it seems to me that, you know, the court that Judge Gilbert could not have found but-for causation below because he didn't say a single word about that. And I think that's what we've got to focus in on today. I agree with Your Honor on that point. The sentencing order, it's not really clear. There is some analysis of what appears to be proximate causation. We're going by the district court or I'm sorry, this court's ruling on the direct appeal, but we agree with Your Honor. It's not abundantly clear that that district court Judge Gilbert actually did conduct the proper or the but-for analysis that's articulated very clearly in Burrage. Because it didn't exist. Right. He had no reason to. Right. Now, it's been also just looking at the plain language of the order. It's just that it's not clear. So are you asking us to back off of the original decision then, which seems to have said pretty clearly that Judge Gilbert found but-for causation. And the alternative, Your Honor, I'm sorry. And it was a shoddy use of but-for because none of us could have known. I would say they're two separate arguments, Your Honor. And we obviously we included a lot of facts in our opening brief because we think they're very much relevant. And I think they demonstrate the fundamental degree of unfairness here in the outcome. And I think looking at the totality of those facts, it's pretty clear that there was an error. I understand that issue was addressed on the direct appeal. But given the district court's comments regarding the evidentiary and credibility issues, I think it's certainly reasonable to expect that were the court, the district court to reassess this issue under the but-for causation standard, that perhaps there could be a different outcome. All right. Thank you, counsel. All right. Thank you. Mr. Norwood. Good morning, Your Honors, and may it please the court. The government's position is pretty simple. Creighton controls this case. Creighton is factually similar, if not identical. The legal analysis is the same. It had the same procedural posture before this case, before this court, and the government believes Creighton controls. I did not anticipate having to come up here and argue a six-year-old decision by this court regarding the but-for causation. I think this court found, I think the district judge found, and this court affirmed, that there was but-for causation in this case. Can you tell me where the district court, in that district court record, that Judge Gilbert found but-for causation when he had no reason to know that but-for causation was on the table? In other words, can you tell me very specifically with record sites, where in the district court opinion or the record below, you think the judge is expressing that he found but-for causation? And if you are not prepared, I would very much appreciate supplemental authority, if you don't have specific citations to the record available. Yes, Your Honor. I would be glad to submit something in a supplemental pleading with this court. I did not scour the entire sentencing looking for that particular aspect of the judge's ruling. I do know that on page five of the government's brief, the district court's order indicated that having weighed all the evidence presented, the court finds that the government has established that it's more probable than not that Ms. Krieger's distribution of fentanyl to Ms. Curry resulted in Ms. Curry's death. I realize the judge did not say the words but-for, but I think this court, when it analyzed Judge Gilbert's decision back in 2010, even mentioned that, even though, and mentioned the issue of causation. Yes, our court in that opinion speaks of but-for causation, but it points to no particular part of the lower court opinion that found a but-for causation. And, you know, mea culpa, the appellate court opinion is simply imprecise in its use of but-for causation, and that is the only place where it's mentioned. Your Honor, I don't know. I will go back and scour the record and see if there's anywhere else. I know that this court specifically talked about causation in its opinion. If this court is going to go back and interpret its 2010 opinion different than the government understands it, I don't know if there's anything I can say that can change the court's mind with respect to that. Yeah. Could I ask you, Mr. Norwood, in Burrage, I understood the Supreme Court to be trying to distinguish, you're trying to choose between a but-for causation rule and a, in essence, contributing factor. Is that right? I think, yes, Your Honor. I think they're trying to do a statutory interpretation of what death resulting means. Yes. And I don't, yeah, and I don't see any indication from Judge Gilbert that he was applying a contributing factor sort of analysis. I thought he had said, well, in the language that you quoted in your brief, more likely than not, well, sorry, that was our decision, but more probable than not that Ms. Krieger's distribution of fentanyl to Ms. Curry resulted in her death. Yes, Your Honor. And I know this circuit had but-for causation before Burrage. I don't know if it went all the way back that far. I don't know what year the Hatfield case, I think the Hatfield case might've been the first case that was decided. 2010. That was 2010. And so that was, well, at the time of your opinion, I'm not sure it was at the time of the district court's decision, but I know this court has had but-for causation for a long time, but. Well, the district court opinion states over and over only that either the fentanyl caused her death or that her death resulted from the fentanyl use, but it never indicates in any way that it is considering but-for causation. And, you know, there's a statement of page three, a statement of page, two statements of page four, a statement of page five. The only language that came close to a but-for consideration is when the district court states that Dr. Heidingsfelter, you know, who had his own problems, further testified that in his opinion, the other drugs found in Curry's system did not cause her death, either taken alone or on combination. But I don't think we can turn that one statement into a but-for causation when we have no indication whatsoever that the district court thought it was evaluating the causation factor under a but-for standard. So that's my, you know, that's my problem. I understand what you're saying, Judge Rovner. I was not, I have not prepared my brief with respect to but-for causation, but I'll be more than happy to go back and again, look at the record and provide supplemental briefing on this case. I think it was clear what Judge Gilbert did in this case. I think it's clear he found that fentanyl was the cause of the but-for cause of the death of Ms. Curry. And I think Judge Gilbert was positioning this case. If he did it without saying so. Well. So. And we also know that he was very unhappy with the sentence that he had to impose on her. Well, yes, Your Honor. And the judge in Creighton said the exact same thing, but that was the law at the time that that was the appropriate sentence. Well, let me, let me ask it this way. Judge Gilbert spoke in terms of the cause, not a cause. And in his findings on this issue said that fentanyl toxicity was the cause of Ms. Curry's death. Um, and is that enough? The distinction between the cause and a cause? That's usually how it's stated at common law. I, I, I think so. And in connection with the, I think that was the but-for finding by Judge Gilbert. I don't, I don't think there was any dispute with what he was finding that fentanyl was the but-for cause of the death of Ms. Curry. He found it by a preponderance, but not beyond a reasonable doubt. And I guess anticipating that the Supreme Court might take up the issue. It did later in a different case, Burrage. But I think when he says it was the cause of the death and her death resulted from the distribution of the fentanyl, I think he was following what the law is and found the causation, the but-for causation of Ms. Curry's death. I, I. How do we factor in, uh, the fact that, uh, the autopsy was so shoddy, the investigation was so shoddy that, uh, poor Jennifer Curry was on all sorts of other, uh, drugs that there was a syringe in her purse that in the room, in her room, there were all sorts of drug paraphernalia. How do we factor all that in? Uh, it's not, with all due respect, I don't think it's this court's job to factor those, uh, matters. The Judge Gilbert made findings, factual findings. This court has already found that there was no clear air in those factual findings. Um, Judge Gilbert acknowledged Dr. Heidingsfelder had some issues. This court did too, but those are factual findings that are reviewed for clear air. This court affirmed and even stated that in its opinion, the court says, uh, the district court found that it was more likely than not that the fentanyl patch provided by Krieger caused Curry's death. The judge appropriately considered and weighed all of the evidence and we can find no clear error. So that's all been, the government's position is with all due respect, all that's been decided. How did the, uh, level of fentanyl compare to a lethal dose? Your Honor, I'm not prepared to answer that question. I did not handle the original case below. If your honors have no further questions. Thank you. Thank you, Mr. Norwood. Um, Mr. Barrow, your time had expired, but you may have two minutes for rebuttal. We kept you at the podium with a lot of questions and a new topic has been introduced. So just a few, uh, just a couple of brief points, uh, as a preliminary matter, if this case were to be remanded, judge Gilbert would be required to perform the but for analysis under heightened standard of proof that he would be required to make that determination beyond a reasonable doubt. Uh, and so he, he, he obviously did not do that. Why not a jury without a jury? Or, or it could be, it could be a jury. I, I, but, but that's wouldn't that in essence be giving retroactive effect to Elaine? Would we re would we be remanding for a new sentencing or for, would we be vacating a conviction here? You would be remanding for new sentencing in terms of which case you would be applying retroactively. It would be Burich with respect to the new two element offense articulated in Burich. Granted that's based on Elaine. I don't understand that. That sounds like a new trial setting aside the conviction. Well, Ms. Krieger has already pled guilty to the distribution, so this will be with respect to the death resulting enhancement. Right. But by the combined operation of Burich and Elaine, as I understand your argument, um, that fact has to be submitted to the jury. The causation fact. The causation fact has to be submitted to a jury, um, determined beyond the reasonable doubt. I mean, isn't that the crux of your argument? That's the crux of the argument, but with respect to the distribution, I'm just saying Ms. Krieger admitted that. Right, right. Um, but the, um, death resulting element of the offense hasn't been submitted to a jury and in fact was withdrawn from the indictment. Correct. Correct. So you're right there. There would be, there would be a trial. Do you have a response to my question to Mr. Norwood about whether the district court's findings expressed in terms of fentanyl toxicity being the cause of Ms. Curry's death is sufficient, um, to, um, constitute a but-for finding? Analyzing the district court opinion, notwithstanding this court's subsequent ruling, I don't think it's clear at all. And I, I'm just being honest in my analysis of that opinion. But that's how at common law, the difference between but-for causation and substantial factor causation is usually stated. It's a distinction between a cause and the cause. Correct. But, and I don't have the precise language in front of me right now, but this, uh, the district court distinguished between death resulting and then the causation aspect. And it's, it's not a very clear order. Um, and so I, I think there is some ambiguity there. Well, that's the same thing. Death resulting is a causation question. Well, there was a distinction made between the two. Now it's possible that Judge Gilbert was actually talking about proximate cause being distinct from actual cause. Um, but I, I, I don't think it's, it's, it's clear from the order itself. Okay. Um, we will give a counsel, um, 14 days to submit a supplemental, um, brief or position statement, um, by letter if you wish, or a more formal filing on this question of whether this court should revisit, um, the, but for causation discussion in a prior decision and, um, citations to the record to support whatever position each of you takes on that question. Okay. Thank you. Thank you. Our thanks to both counsel. The cases.